IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

THE MARK P. LESHER AND DONNA
M. LESHER REVOCABLE TRUST DATED
FEBRUARY 10, 2004, AS AMENDED AND
RESTATED ON DECEMBER 30, 2015,

      Plaintiff,

vs.                                                                                         Civ. No. 20-1237 JCH/KRS

PAUL DON HEDGES AND
KELLY ANN HEDGES,

      Defendants.

## MEMORANDUM OPINION AND ORDER

This case is before the Court on *Defendants' Motion for Summary Judgment Based Upon the Expiration of the Statute of Limitations* [Doc. 50]. The issue raised by the motion is whether Plaintiff filed its claims within the limitations period, which in turn depends upon the application of New Mexico's discovery rule. Plaintiff has responded to the motion for summary judgment [Doc. 53], and Defendants filed their reply. [Doc. 56]. After reviewing the arguments and the evidence, the Court concludes that there is a genuine issue of material fact as to when the statute of limitations began to run, and therefore the motion should be denied.

## SUMMARY JUDGMENT STANDARD

Summary judgment is warranted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as

to any material fact and that the moving party is entitled to a judgment as a matter of law." *See Mincin v. Vail Holdings, Inc.*, 308 F.3d 1105 (10th Cir. 2002) (quoting Fed. R. Civ. P. 56(c)).

## **SUMMARY JUDGMENT FACTS**

Taken in the light most favorable to the Plaintiff, the Mark P. Lesher and Donna M. Lesher Revocable Trust ("the Trust"), the summary judgment facts are as follows.

Defendant Paul Hedges is a licensed general contractor in New Mexico. In that capacity, he has done both residential and commercial construction. In 2008, Mr. Hedges served as the general contractor in constructing the home at issue in this case located at 2501 Bosque Entrada Trail NW in Albuquerque, New Mexico ("the house"). As general contractor, Mr. Hedges was responsible for overseeing the subcontracting work, including plumbing. The plumbing installed in the house during construction was Kitec, which was typically bright orange in color and had the word "KITEC" stamped on the outside. By 2013, it was very well known that Kitec piping was prone to failing and causing significant damage. Plumbers were already replacing Kitec piping by 2013, and there was media attention and common knowledge about its defects even outside the industry.

On November 14, 2013, the Trust's co-trustees, Mark and Donna Lesher, purchased the house from Defendants Paul and Kelly Ann Hedges.[1] During the course of the negotiations and sale of the house, the Hedges provided the Leshers with a Seller's Disclosure form setting forth, among other things, the details of the construction of the house. Doc. 1-3. The form indicates that the house was built in 2008. In the plumbing section of the form, Paul Hedges responded to the question "Type of water supply pipes" by checking the box marked "Polybutylene." Kitec pipes

---

[1] Not long thereafter, the Trust (which is the Plaintiff in this case) became the Leshers' successor in interest in the house.

2

are not polybutylene. The other options for that question were "Lead," "Galvanized," "Copper," "Other" (with a space to write an explanation, such as the word "Kitec"), and "Don't Know." The Hedges did not check any of these other options, and nowhere on the disclosure form did they indicated that the house contained Kitec pipes. Although he was the general contractor who built the house, Mr. Hedges testified that he was "guessing" when he checked the box marked "Polybutylene."

Donna Lesher is a licensed Realtor who has specialized in commercial properties. She has not taken any course in plumbing and piping systems, nor does she have work experience in that area. In her October 19, 2021, deposition, Ms. Lesher testified that when she was considering buying the house, she reviewed the Seller's Disclosure Statement in detail. She testified that when she came to the plumbing section of the statement and saw that the box for polybutylene had been checked, she "was familiar with it [polybutylene], that it had not been used since 1995. So I knew that there was—that he [Mr. Hedges] just didn't know what he was talking about." She also testified that when she asked him about the portion of the form relating to the pipes, Defendants' real estate broker told her that Mr. Hedges had made a mistake on the form and that the plumbing was "fine." Ms. Lesher testified that in her mind, the checking of the word "polybutylene" had been a mistake because polybutylene was no longer being installed.[2] There is no evidence that Ms.

---

[2] Almost five months after her October 19, 2021, deposition, Ms. Lesher signed her March 7, 2022, declaration, which contradicts her prior deposition testimony in certain respects. In her declaration, Ms. Lesher avers that when she purchased the home in 2013, she "did not know that polybutylene pipes were problematic and no longer used in homes," and that she first learned about polybutylene pipes in September of 2020. She also states that at the time of the purchase, she "did not believe that Mr. Hedges made a mistake or just didn't know what he was talking about in selecting polybutylene piping on the seller's disclosure."

  The Tenth Circuit has held that there are situations where a district court may be justified in disregarding certain contradictory testimony, noting that "courts will disregard a contrary affidavit when they conclude that it constitutes an attempt to create a sham fact issue." *Franks v.*

Lesher had any knowledge about the existence of Kitec pipes or the problems with Kitec piping generally.

Prior to closing on the sale of the house, the Leshers engaged A C Home Inspections to inspect the home and produce an inspection report. With regard to water service, the inspector noted that the water entry piping was not visible, the visible water distribution piping was copper, and the condition of the pipes was satisfactory. However, most of the Kitec pipes used in construction of the house are not visible to the naked eye, as they are embedded in the concrete slab or hidden inside the walls. There is some exposed orange Kitec piping in the garage, but during construction it was sprayed white with paint and wall texturing material. Based on photographs offered by Defendants, it appears that small parts of those pipes were not covered with white overspray. However, on the record before the Court it is impossible to determine whether the areas of orange Kitec piping not covered by overspray were enough to reveal to a trained eye the fact that they were Kitec.

In September of 2020, nearly seven years after they purchased the home, the Leshers discovered two leaks in the pipes. The plumber the Leshers engaged to fix the leaks (which

---

*Nimmo*, 796 F.2d 1230, 1237 (10th Cir. 1986) (emphasis added). To determine whether a contradicting affidavit seeks to create a sham fact issue, courts must look to three factors: whether: "(1) the affiant was cross-examined during his earlier testimony; (2) the affiant had access to the pertinent evidence at the time of his earlier testimony or whether the affidavit was based on newly discovered evidence; and (3) the earlier testimony reflects confusion which the affidavit attempts to explain." *Rios v. Bigler*, 67 F.3d 1543, 1551 (10th Cir.1995).

Turning to these factors, there is no question that Ms. Lesher was cross-examined during her October 2021 deposition; that she had access to the pertinent evidence (in this case, the state of her knowledge in 2013 regarding polybutylene pipes and her thoughts about the seller's disclosure statement when she reviewed it) at the time of her deposition; and that there was nothing in her deposition testimony reflecting any level of confusion or uncertainty about her state of mind in 2013 requiring clarification or explanation. Accordingly, for purposes of ruling on the motion for summary judgment, the Court will disregard the portions of Ms. Lesher's declaration that contradict her prior deposition testimony.

required tearing into a bathroom wall) reported to them that the pipes in the house were Kitec. Less than two months later, on November 25, 2020, the Trust filed its complaint in this case. It asserts claims for fraud based on concealing and failing to disclose Kitec piping, intentional misrepresentation, breach of the duty of good faith and fair dealing, and unjust enrichment.

## DISCUSSION

I.   The Statute of Limitations and the Discovery Rule

In this diversity action, the Court must apply the State of New Mexico's statute of limitations, including tolling and accrual principles. *Elm Ridge Expl. Co. v. Engle*, 721 F.3d 1199, 1210 (10th Cir. 2013); *see Commonwealth Prop. Advocates, LLC v. Mortg. Elec. Registr. Sys., Inc.*, 680 F.3d 1194, 1204 (10th Cir. 2011) (exercising diversity jurisdiction, court applies state substantive law with objective of attaining the result that would be reached in state court). The statute of limitations for fraud or mistake allows a claimant to bring suit within four years of accrual. N.M. Stat. Ann. 1978 § 37-1-4.

The statute of limitations begins to run when an action accrues. *Garcia v. La Farge*, 1995-NMSC-019, ¶ 14, 893 P.2d 428, 433, overruled on other grounds, *Cahn v. Berryman*, 2018-NMSC-002, 408 P.3d 1012. "The date from which the statute of limitations begins to run may be extended by New Mexico's discovery rule, under which a 'cause of action does not accrue until the plaintiff discovers' the injury." *Elm Ridge Expl. Co.*, 721 F.3d at 1210 (quoting *Wilde v. Westland Dev. Co.*, 2010-NMCA-085, ¶ 18, 241 P.3d 628, 635) (emphasis added) (applying discovery rule to claims of conspiracy and breach of contract). That "discovery rule" is codified at NMSA 1978, § 37-1-7 (1880). Under the discovery rule, the statute of limitations begins to run "when the plaintiff acquires knowledge of facts, conditions, or circumstances which would cause a reasonable person to make an inquiry leading to the discovery of the concealed cause of action";

5

this is referred to as "inquiry notice." *Yurcic v. City of Gallup*, 2013-NMCA-039, ¶ 9, 298 P.3d 500, 503 (internal quotation marks omitted); *see Gerke v. Romero*, 2010-NMCA-060, ¶ 10, 237 P.3d 111, 115. The question is whether the plaintiff possesses knowledge that "'would, on reasonable diligent investigation, lead to knowledge of'" the injury. *Wilde*, 2010-NMCA-085, ¶ 18, 241 P.3d at 635 (quoting *Ambassador E. Apts., Invs v. Ambassador E. Invs.*, 1987-NMCA-135, ¶ 7, 746 P.2d 163, 165). Actual knowledge is not required. *Rhinehart v. Nowlin*, 1990-NMCA-136, ¶ 39, 805 P.2d 88, 97. "Whatever puts a party upon inquiry is sufficient 'notice' and the party has a duty to inquire or he will be chargeable with all the facts." *Id.*; *see Yurcic*, 2013-NMCA-039, ¶ 9, 298 P.3d at 504.

"The key consideration under the discovery rule is the factual, not the legal, basis for the cause of action." *Coslett v. Third St. Grocery*, 1994-NMCA-046, ¶ 24, 876 P.2d 656, 664. Whether the plaintiff knows that those facts establish a legal cause of action is not relevant. *Christus St. Vincent Reg'l Med. Ctr. v. Duarte-Afara*, 2011-NMC-112, ¶ 29, 267 P.3d 70, 77. The statute of limitations begins to run even though the plaintiff lacks knowledge of the full extent of the injury. *Gerke*, 2010-NMCA-060, ¶ 10, 237 P.3d at 115.

"When a defendant makes a prima facie showing that a claim is time barred, a plaintiff attempting to invoke the discovery rule has the burden of 'demonstrat[ing] that if [he or] she had diligently investigated the problem [he or] she would have been unable to discover' the facts underlying the claim." *Butler v. Deutsche Morgan Grenfell, Inc.*, 2006-NMCA-084, ¶ 28, 140 P.3d 532, 539 (involving motion to dismiss); *see Yurcic*, 2013-NMCA-039, ¶¶ 28-30, 298 P.3d at 508-09 (discussing shifting burdens of proof). The party invoking the discovery rule has the burden of demonstrating that it lacked knowledge of the cause of action and, even if that party had diligently investigated, it could not have discovered the problem or the cause of injury. *Martinez v. Showa*

*Denko*, K.K., 1998-NMCA-111, ¶ 22, 964 P.2d 176, 181 (involving summary judgment motion); *McNeill v. Rice Eng'g & Operating Inc.*, 2006-NMCA-015, ¶ 40, 128 P.3d 476, 486 (addressing plaintiffs' burden in opposing summary judgment motion). In *Martinez*, the court held that even though there were divergent medical opinions regarding the cause of the plaintiff's injuries, the statute of limitations began to run because the plaintiff had information that there was a "possible connection" between her injuries and a dietary supplement; this information would put a reasonable person on notice. *Martinez*, 1998-NMCA-111, ¶¶ 24-25, 964 P.*2*d at 182 (emphasis added).

"'Historically, [New Mexico courts] have characterized the application of the discovery rule as a jury question, particularly when conflicting inferences may be drawn.'" *Yurcic*, 2013-NMCA-039, ¶ 10, 298 P.3d at 504 (quoting *Williams v. Stewart*, 2005-NMCA-061, ¶ 16, 112 P.3d 281, 286). But when the relevant facts are undisputed, summary judgment may be granted. *See id*. ¶¶ 19-22, 298 P.3d at 506-07 (affirming summary judgment on the point that plaintiff had inquiry notice of claims against City before two-year statute of limitations period); *see Brunacini v. Kavanagh*, 1993-NMCA-157, ¶ 29, 869 P.2d 821, 826 (stating that although New Mexico caselaw states that discovery rule "generally" presents factual questions for jury, when the relevant facts are undisputed the court can decide the issue as a matter of law); *Williams v. Stewart*, 2005-NMCA-061, 137 N.M. 420, 426–27, 112 P.3d 281, 287-88 (same). And, although sitting in diversity, this Court applies federal procedure concerning summary judgment standards at any event. *Hill v. Allstate Ins. Co.*, 479 F.3d 735, 739 (10th Cir. 2007).

## II.     Analysis

Defendants argue that the Leshers were on notice in 2013 that they needed to conduct an inquiry as to the nature of the pipes in the house, that they failed to conduct such an inquiry, and therefore the statute of limitations began to run at that time, making their current claims time-barred. Plaintiff contends that the Leshers could not have known that the house contains defective Kitec piping until they discovered and attempted to repair two leaks in 2020. The questions raised by the motion are: (1) when did the Leshers have sufficient facts to be put on notice that they needed to make an inquiry as to the nature and condition of the pipes in the house, and (2) once put on notice, did the Leshers make a reasonable inquiry?

As to the first point, Ms. Lesher's testimony at her deposition reveals that she knew prior to purchasing the house in 2013 that the seller's disclosure statement contained an inaccurate statement about the type of pipes because builders had stopped using polybutylene in 1995—well before the house was built. She attributed this inaccuracy in the disclosure form to Mr. Hedges not knowing what he was talking about. Thus, the Leshers were on notice that they should make additional inquiries about the pipes.

As to the second point, a jury could reasonably conclude that the Leshers did make reasonable inquiries. First, Ms. Lesher asked the seller's real estate agent about the pipes, and he assured her that the pipes were "fine." Second, the Leshers hired an inspection company to inspect the home prior to purchase. The inspector was not able to determine that there was Kitec piping in the house. Third, the Leshers' inquiry was hampered by the fact that the vast majority of the Kitec pipes were hidden from view in the concrete slab or behind walls. Whether it was intentional concealment or merely an accident of the construction process, the small portion of Kitec piping that is exposed to view was painted over, thereby concealing its tell-tale orange color from both

the Leshers and the inspector. Therefore, a jury could conclude that the Leshers would have had to tear into a wall or into the slab in order to discover the Kitec pipes, a level of inquiry that would be far from reasonable.

Accordingly, the Court concludes that Defendants have not met their burden to show that there is no genuine issue of material fact that the Leshers' claim is time-barred.

**IT IS THEREFORE ORDERED** that *Defendants' Motion for Summary Judgment Based Upon the Expiration of the Statute of Limitations* [Doc. 50] is **DENIED**.

_____
SENIOR UNITED STATES DISTRICT JUDGE